UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT JAMES CURTIS**,

        Plaintiff,

v.

**NANCY A. BERRYHILL**, Acting Commissioner of Social Security,[1]

        Defendant.

Case No. 3:15-cv-00867-KI

OPINION AND ORDER

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Page 1 - OPINION AND ORDER

Robert J. Curtis
14114 SE Elderberry Ln.
Milwaukie, OR 97267

    Plaintiff

Billy J. Williams
United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902

Lars J. Nelson
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

*Pro se* plaintiff Robert Curtis brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Curtis filed an application for a period of disability and DIB on May 18, 2011, and an application for SSI on August 15, 2011. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Curtis, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on December 19, 2013.

On January 2, 2014, the ALJ issued a decision finding Curtis was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 26, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ

determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified Curtis' severe impairments as post-traumatic epilepsy; multifocal encephalomalacia of the brain, status post-craniotomy; and cognitive dysfunction. The ALJ found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded Curtis retained the residual functional capacity ("RFC") to perform a full range of work, with the following limitations: he could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he could not climb ladders, ropes, or scaffolds; he must avoid all exposure to hazards such as dangerous machinery and unsecured heights; he can read, write, and calculate numbers; and he can learn, remember, and perform simple, routine and repetitive work tasks requiring simple work instructions, in an environment that is routine, predictable, and low stress with few work place changes and no "over the shoulder" supervision. Tr. 18. Given this residual functional capacity ("RFC"), the ALJ determined Curtis could not perform his past work, but could perform other work in the national economy such as industrial cleaner,

Page 5 - OPINION AND ORDER

dishwasher, and motel cleaner.

## FACTS

Curtis, who was 41 years old on his alleged disability onset date of February 1, 2009, left high school at 14 years old. He last worked as a security guard, but the job lasted less than one month. Prior to that job, he worked for many years as a service station attendant.

Well before his alleged disability onset date, Curtis suffered a traumatic brain injury ("TBI") as a result of a car accident in 1989. He recovered after a lengthy period of rehabilitation. Curtis was then diagnosed with a seizure disorder in 2005. It was "well controlled" until he experienced a partial seizure in May 2013. Tr. 204. After the May 2013 seizure, he was alert, attentive, fully oriented, with normal speech and language. His motor, coordination and sensory examinations were unremarkable. He had a limping gait, which was normal for him. He was told to increase his anti-seizure medication dosage. At a follow-up appointment a month later, he was alert, attentive, fully oriented, with normal speech and language, and no gross cognitive deficits. He could stand without pushing off. His gait and station were normal. A CT scan showed encephalomalacia in the anterior inferior right temporal lobe, and in the inferior right frontal lobe, and a left high frontal craniotomy. There was no evidence of acute infarction or acute intracranial hemorrhage. He was told to increase his anti-seizure medication.

In November 2013, Christopher Ginocchio, M.D., treated Cutis again, after not having seen him since December 2010. Dr. Ginocchio commented that "the patient has been doing fairly well although it sounds like he did have a partial complex seizure in May of this year." Tr. 225. Curtis and the friend accompanying him to the visit reported that Curtis had been working,

but could not keep up as a security guard. Curtis and his friend described cognitive difficulties, especially with memory and staying on task. Curtis also reported square dancing two to three times a week. Curtis performed 28/30 on a mental status test, missing two on serial sevens. He had previously scored 29/30 in 2006. Dr. Ginocchio continued to prescribe anti-seizure medication. Dr. Ginocchio noted that although Curtis scored well on the mental status examination, his complaints about memory and distractibility "definitely ring true with my experience." Tr. 226. Dr. Ginocchio commented on Curtis' inability to follow through on tasks, an inability to multitask, and that he was not really surprised Curtis had lost his job. Additionally, he thought Curtis' use of marijuana was not helpful in obtaining employment. He thought Curtis qualified for Social Security disability.

## DISCUSSION

I.     Representation

Curtis complains that the ALJ referred to his attorney at the hearing by the name Schneider, when Jared Stromer represented him.[2] According to Curtis, Stromer did not correct the ALJ. Curtis also suggests his representative did not present evidence or argument on the right impairment–Curtis does not believe his primary impairment is epilepsy but is instead

---

[2]Curtis also asserts that the audio recording of the hearing demonstrates the ALJ called his representative by the wrong name, an error the representative did not correct and an error not reflected in the written transcript. The regulations applicable to hearings require that "[t]he record be prepared as a typed copy of the proceedings" and that is what I review. 20 C.F.R. §§ 404.951, 416.1451 (explaining the recording is prepared as a typed copy of the proceedings if the claimant seeks judicial review); 42 U.S.C. § 405(g) ("the Commissioner . . . shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."). Curtis has not submitted the audio recording. Further, in his Amended Complaint, Curtis asserts the ALJ referred to his attorney as Kevin Kerr. In any event, Curtis does not explain how he was prejudiced by any error made by the ALJ.

Page 7 - OPINION AND ORDER

traumatic brain injury and side effects of his anti-seizure medication. He asserts he was "bamboozled" by the hearing and "cheated out of clear representation[.]" Pl.'s Br. 1.

Curtis has no Sixth Amendment right to counsel in a social security hearing. *See Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985) (a claimant has "no constitutional right to counsel at a disability benefits hearing"). In any event, there is no indication, either in the transcript or in the decision itself, that any inadequate representation affected the outcome here. The ALJ included cognitive dysfunction (whether as a result of epilepsy, TBI, or side effects of medication) as a severe impairment and assessed the residual functional capacity limitations resulting from such a severe impairment. *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981) (even "[l]ack of counsel does not affect the validity of the hearing . . . unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings").[3]

II.     Credibility

Curtis writes that he has always been a hard worker, pointing out that he worked from age 17. He writes that he quit working in 2009 because he believed his TBI and the side effects of his anti-seizure medication "caught up with me." Pl.'s Am. Compl. 3. (Notably, he reports later that he was dismissed because of his use of marijuana. *Id.* at 8.) Curtis explains that he attempted to work at a security job, but he had trouble remembering routes and procedures. He applied for other jobs but was not hired. He describes various symptoms–such as his unpredictable vomiting, his inability to drive, and his anger–but it is unclear whether these are his current symptoms or those in existence at the time of the hearing. He agrees he has not had any

---

[3]I note Curtis has a statutory right to appoint a representative, if desired. 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700, 416.1500 ("You may appoint someone to represent you in any of your dealings with us.").

seizures for more than two years.

At the hearing, Curtis testified that his seizures began in 2005. He last had a seizure in May 2013, and the one before that had been in 2007.[4] Curtis explained the anti-seizure medication caused him to be forgetful and fatigued. He testified that he liked to jet ski in the summer and square dance a couple of times a week, and ride his bicycle. In his pain and fatigue questionnaire, Curtis reported that he needed to rest twenty minutes, or nap for one to two hours daily. He then wrote that he needed to rest between activities such as playing basketball and running. He reported feeling forgetful, had difficulty controlling his temper, and had trouble focusing, reading, writing, and getting along with other people. He wrote that he spent his day dressing, grooming, eating, exercising, walking the dog, watching television, reading the newspaper, riding his bicycle, visiting with friends and family, and napping. He also did his laundry, took out the garbage, and performed yard work.

The ALJ found Curtis' description of his impairments not supported by the objective and clinical findings, his own activities of daily living, or his work history. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of

---

[4]Other evidence in the record indicates the last seizure was in February 2008. Curtis went to the emergency room for treatment. The seizure was witnessed. Tr. 44. Curtis reported to Dr. Ginocchio that he had decreased his anti-seizure medication dosage and then missed a dose.

Page 9 - OPINION AND ORDER

the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[5]

The ALJ gave clear and convincing reasons to reject Curtis' testimony. As an initial matter, Curtis has been taking anti-seizure medication since 2005, and was able to continue working until 2009. His employment was terminated in 2009 for reasons other than his impairments. He continued to look for work after losing his job. *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) (ALJ found plaintiff's "lengthy history of lower back problems did not render her disabled" where the condition remained unchanged and her "back problems had not prevented her from working over that time"); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (proper consideration is that the claimant left his job for reasons other than his alleged impairment).

Additionally, the ALJ thought Curtis' extensive daily activities undermined his

---

[5]The Commissioner disagrees that the clear and convincing standard controls the analysis, encouraging application of the more deferential regulatory requirement for specific reasons supported by substantial evidence. Def.'s Br. 10, n.4. The Ninth Circuit has rejected her argument. *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

Page 10 - OPINION AND ORDER

testimony. Although Curtis testified to problems with balance and fatigue, he rode a bicycle, square danced, and jet skied in the summer. Curtis asserted problems with reading, paying attention, and anger, but he reported in his questionnaire that he read the newspaper daily and visited with friends and family. He could use public transportation and shop in stores. These activities tend to undermine his testimony about the extent of his symptoms. The ALJ's reading of the record is "supported by inferences reasonably drawn from the record[.]" *Molina*, 674 F.3d at 1110.

Finally, although the ALJ cannot reject testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the impairment and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (discussing pain testimony). The ALJ pointed out that after Curtis' seizure in 2013, he was fully oriented, with normal speech and language, and with no gross cognitive deficits. Additionally, Dr. Ginocchio tested his mental status (while he was on medication) and scored him at 28/30, missing only serial sevens. He was awake, alert, interactive, with a good sense of humor. He had previously scored a 29/30 in 2006, while he was still working.

In sum, the ALJ gave clear and convincing reasons, supported by substantial evidence in the record, to find Curtis' testimony about the extent of his symptoms less than credible.

III.    Dr. Ginocchio's Opinion

To the extent Curtis challenges the ALJ's assessment of Dr. Ginocchio's opinion, I note the weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the

opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

      Here, because Dr. Ginocchio's opinion was contradicted by the State agency medical consultants, the ALJ was required to give specific and legitimate reasons to discount the doctor's opinion. The ALJ gave three reasons for discounting Dr. Ginocchio's opinion. First, his opinion that Curtis "qualifies for needing Social Security disability" is just a statement that Curtis would benefit from disability benefits. In any event, the ALJ commented, the issue of disability is reserved to the Commissioner. Additionally, and more importantly, Dr. Ginocchio's opinion about Curtis' mental limitations is not supported by the doctor's own objective findings. Curtis performed very well on the mental status examination. The ALJ also commented that Dr. Ginocchio had not seen Curtis for three years; in other words, the doctor had a limited treating relationship with Curtis. An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is " conclusory, brief, and unsupported by the record as a whole[.]" *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ did not err.

Page 12 - OPINION AND ORDER

IV. Vocational Expert Testimony

  Curtis argues that he has undertaken internet searches to find jobs such as "industrial cleaner," and learned that they all require a high school diploma, GED, or education beyond grade school. He also argues that the jobs are almost always less than full time.

  I cannot consider evidence Curtis has submitted to the Court. My task is to assess the ALJ's decision and I may not consider evidence outside the record. *See* 42 U.S.C. § 406(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner"). In any event, the ALJ "may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *see also Wright v. Massanari*, 321 F.3d 611, 616 (9th Cir. 2003) (holding that the ALJ may rely on the testimony of the vocational expert). As a result, the ALJ did not err.

V. Medical records since the ALJ's decision

  Curtis submitted to the Court, as an attachment to his Amended Complaint, a neuropsychological evaluation written seven months after the ALJ issued his decision but before the Appeals Council denied review. Am. Compl. Ex. 14. In the evaluation, Julia Wong-Ngan, Ph.D., sets out the results of extensive testing of Curtis' verbal skills, abstract reasoning, conceptual thinking, attention and concentration, mental tracking, learning and memory, problem solving, fine motor dexterity, anxiety and depression. She opined that his moderate memory deficit, and mental tracking difficulties, along with his severely impaired fine motor dexterity, would affect Curtis' ability to learn new information, follow instructions, and perform at a normal pace. There is no indication Dr. Wong-Ngan's report was provided to the Appeals

Council.  Tr. 4 (listing additional evidence made a part of the record).  As such, I am precluded from considering

When a claimant submits evidence to the district court that is not in the administrative record, the district court must determine whether to remand the case to the ALJ for reconsideration under 42 U.S.C. § 405(g).  That section provides for remand where there was a "failure to incorporate [the new] evidence into a prior proceeding."  42 U.S.C. § 405(g).  To justify a remand, Curtis must demonstrate "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  *Id.*  To be material, the new evidence offered must bear directly and substantially on the matter in dispute.  *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).  Good cause may be established if the evidence became available after the Commissioner's final decision and the claimant could not have obtained the evidence earlier.  *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (no explanation for late solicitation of information).

I am inclined to view the new evidence as "material."  Curtis, however, has failed to establish good cause for his failure to obtain such an opinion at the time of the administrative hearing or to submit it to the Appeals Council prior to its review of his case.  Both Curtis and his attorney were aware at the time of the hearing of Curtis' cognitive impairments and neither alerted the ALJ to the necessity of a neuropsychological evaluation.  Additionally, Curtis did not attempt to provide the neuropsychological evaluation to the Appeals Council prior to its decision denying review.  *See Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) ("A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied.").

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this   24th   day of January, 2017.

     /s/ Garr M. King
Garr M. King
United States District Judge

Page 15 - OPINION AND ORDER